UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NORIX GROUP, INC., <br><br> Plaintiff, <br><br> v. <br><br> CORRECTIONAL TECHNOLOGIES, INC. d/b/a CORTECH USA, and VDL INDUSTRIES, LLC, d/b/a AMERICAN SHAMROCK, <br><br> Defendants. | Case No. 17-cv-07914 <br><br><br> Judge John Robert Blakey |

## MEMORANDUM OPINION AND ORDER

Plaintiff Norix Group, Inc. sued Defendants Correctional Technologies, Inc., d/b/a Cortech USA, and VDL Industries, LLC d/b/a American Shamrock, for patent infringement, false marking, false advertising, consumer fraud, and deceptive trade practices. [31] ¶ 1. Norix alleges that Cortech copied Norix's products and misrepresented the patent status of several Cortech products. *Id.* Cortech moved to dismiss three counts of Norix's second amended complaint for failure to state a claim: false patent marking (Count II); violation of the Illinois Consumer Fraud and Deceptive Trade Practices Act (Count IV); and violation of the Illinois Uniform Deceptive Trade Practices Act (Count V). [35]. For the reasons explained below, this Court partially grants and partially denies the motion.

## I. The Complaint's Allegations

Norix designs, manufactures, and distributes furniture and other

products. [31] ¶ 2. Norix specializes in "intensive-use" furniture designed for environments like prisons and psychiatric facilities, where inmates or patients may use furniture to harm themselves, conceal contraband, or damage property. *Id.* ¶¶ 2, 8. Cortech also sells intensive-use furniture, which American Shamrock manufactures for Cortech. *Id.* ¶¶ 4, 30. Joseph Claffy owns and operates both Cortech and American Shamrock. *Id.* ¶¶ 3, 4.

For over ten years, Claffy sold Norix's products under a sales agreement between Cortech and Norix. *Id.* ¶ 23. A few months after that agreement ended in January 2008, Cortech started selling products similar to those it previously sold for Norix. *Id.* ¶¶ 24, 25. For example, Cortech sells storage boxes, chairs, beds, shelves, and tables that closely resemble Norix's products. *Id.* ¶ 30.

Cortech's advertising falsely claims that many of its products have "multiple design and utility patents pending," even though Cortech does not have patents pending for those products. *Id.* ¶¶ 27, 28. Claffy attempted to file patents for two Cortech products, but neither product currently has a patent. *Id.* ¶ 31. First, Claffy applied for a patent covering Cortech's "Barracuda Box" in October 2008. *Id.* ¶ 31, 33. The United States Patent and Trademark Office (USPTO) rejected this patent and Claffy abandoned it in January 2011. *Id.* ¶¶ 31, 34. Second, Claffy applied for a patent covering Cortech's "EZ Bunk," but the patent expired in July 2016 after Cortech failed to pay a maintenance fee. *Id.* ¶ 31. Yet Cortech continues to falsely represent that these products have patents pending. *Id.*

Aside from the two examples above, the USPTO has no published applications

2

or patents on record for Cortech's products. *Id.* ¶ 32. At least twice, Cortech advertised products using "patent pending" language without ever filing any associated patent application. First, Cortech's 2017 catalog states that the "Sabre Chair," a chair very similar to Norix's "Mega Max" chair, has "multiple design and utility patents pending." *Id.* ¶ 41. Yet neither Cortech nor American Shamrock has applied for patents covering the Sabre Chair. *Id.* ¶ 40. Second, in Cortech's 2013 and 2017 catalogs and online product specification sheets, Cortech represented that products in its "Endurance Series" of furniture had "multiple design and utility patents pending." *Id.* ¶ 48. But neither Cortech nor American Shamrock has applied for patents covering the Endurance Series. *Id.* ¶ 52.

Norix claims that Cortech's false advertising has caused Norix competitive injury in the small market in which the two companies compete. *Id.* ¶¶ 72, 74. Often, institutional customers require bidding furniture companies to: 1) show that their products do not infringe any patents; and 2) indemnify customers against patent infringement lawsuits.[1] *Id.* Because customers want to avoid patent infringement allegations, Norix contends, customers are less likely to choose products that lack "patent pending" assurances. *Id.* Thus, customers are less likely to choose Norix's products—many of which lack "patent pending" labels—than Cortech's products, which falsely represent that they have patents pending. *Id.* So, Norix alleges, "each sale of Cortech's products obtained by defendants' false representations" likely means

---

[1] Norix attached two documents to its complaint related to this allegation: 1) a purchase order from one of Norix's clients containing an agreement that the seller will indemnify the buyer against all suits arising from intellectual property infringement; and 2) a bid solicitation form from one of Norix's customers containing a similar infringement and indemnity clause. [41, 42].

3

"a lost sale to Norix." *Id.* ¶ 76.

## II. Legal Standard

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must provide a "short and plain statement of the claim" showing that the pleader merits relief, Fed. R. Civ. P. 8(a)(2), so the defendant has "fair notice" of the claim "and the grounds upon which it rests," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint must also contain "sufficient factual matter" to state a facially plausible claim to relief—one that "allows the court to draw the reasonable inference" that the defendant committed the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). This plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013).

In evaluating a complaint on a Rule 12(b)(6) motion, this Court accepts all well-pled allegations as true and draws all reasonable inferences in the plaintiff's favor. *Iqbal*, 556 U.S. at 678. This Court does not, however, accept legal conclusions as true. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). On a motion to dismiss, this Court may consider the complaint itself, documents attached to the complaint, documents central to the complaint (to which the complaint refers), and information properly subject to judicial notice. *Williamson*, 714 F.3d at 436.

Fraud claims must also meet Rule 9(b)'s heightened pleading requirements. *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014). Rule 9(b)

demands that claimants alleging fraud "state with particularity the circumstances constituting fraud." To satisfy Rule 9(b), a plaintiff "ordinarily must describe the who, what, when, where, and how of the fraud." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 441–42 (7th Cir. 2011) (internal quotation marks omitted).

III. Analysis

A. **Count II: False Marking**

Count II alleges that Cortech falsely advertised that some of its products have patents pending, and that Cortech did so with the intent of deceiving the public. [31] ¶¶ 91–94. Count II also alleges that this false marking directly caused competitive injury to Norix. *Id.* ¶¶ 95–102. Cortech[2] argues that Norix fails to adequately plead a competitive injury and Cortech's intent to deceive. [35] at 2–10.

To state a claim under the False Marking Statute, 35 U.S.C. § 292, a plaintiff must allege that: 1) the defendant marked an unpatented article with patent language; 2) the defendant intended to deceive the public; and 3) the plaintiff suffered a competitive injury as a result. *Two Moms & a Toy, LLC v. Int'l Playthings, LLC*, 898 F. Supp. 2d 1213, 1216 (D. Colo. 2012). The second element sounds in fraud, so a plaintiff must plead it with the requisite particularity under Rule 9(b). *See Camasta*, 761 F.3d at 736; *In re BP Lubricants USA Inc.*, 637 F.3d 1307, 1311 (Fed. Cir. 2011).

---

[2] Defendants use "Cortech" to mean both Cortech and American Shamrock; this Court does the same.

5

### 1. Marking an Unpatented Article

Norix alleges that Cortech has used the phrase "patent pending" or its equivalent when advertising several products that do not have patents pending. [31] ¶¶ 92–93. To support these claims, Norix attached samples of Cortech's advertising materials to its complaint, including: Cortech's 2011, 2013, and 2017 catalogs with several items marked "multiple design and utility patents pending"; Cortech's advertisement in a 2017 issue of Correctional News claiming that the Master Box had "multiple design and utility patents pending"; and a 2014 product specification sheet from Cortech's website that claims, "The Endurance Bed and the manufacturing process to produce them has [sic] multiple design and utility patents pending." [31-2, 31-3, 31-5, 31-6, 31-8]. Cortech does not contest this element. In fact, Cortech acknowledged in open court during a June 19, 2018 motion hearing that it made misstatements about patents in its advertising materials, although it characterized the misstatements as unintentional.

### 2. Intent to Deceive the Public

During an April 11, 2018 hearing, Norix argued that the explicit nature of the "patent pending" language itself demonstrated intent to deceive, especially because Cortech never even attempted to patent many of the falsely marked products. Norix also alleges that this Court could infer intent to deceive from the fact that Claffy has owned and operated Cortech and American Shamrock for several years and presides over day-to-day operations for both small companies. [31] ¶¶ 3, 22, 31–36. Cortech argues that Norix's allegations fail to show that Claffy knew about the false

statements in Cortech's advertising. [35] at 8–9.

To plead intent to deceive in a false marking claim, the plaintiff "must provide some objective indication to reasonably infer" that the defendant knew of the falsity of the marking. *BP Lubricants*, 637 F.3d at 1311. In this context, a complaint can satisfy Rule 9(b) by alleging: 1) a misrepresentation; and 2) that the party making the misrepresentation knew it was false. *Clontech Labs., Inc. v. Invitrogen Corp.*, 406 F.3d 1347, 1352 (Fed. Cir. 2005); *see also Fasteners for Retail, Inc. v. Andersen*, No. 11 C 2164, 2011 WL 5130445, at *4 (N.D. Ill. Oct. 28, 2011) (finding a "plausible inference" of deceptive intent where the complaint alleged that the defendant's marketing department knew which products had patents and which did not). Pleading deceptive intent usually proves easier when the marked product in question never had a patent at all (as opposed to an expired patent). *Compare Simonian v. MeadWestvaco Corp.*, 812 F. Supp. 2d 925, 931 (N.D. Ill. 2011) (holding that evidence of a single marking revision after the expiration of a valid patent insufficiently alleged deceptive intent), *with U.S. Gypsum Co. v. Pac. Award Metals, Inc.*, 438 F. Supp. 2d 1101, 1106 (N.D. Cal. 2006) ("[I]f a party states that an article marked with a patent is covered by the patent when it knows it is not, one can infer that an intent to deceive existed for purposes of a false patent marking claim.").

Because Norix alleges that Claffy knew about Cortech's false marking and oversaw Cortech's day-to-day activities (including applying for patents, and ostensibly authorizing marketing materials), this Court can reasonably infer deceptive intent. In *Fasteners*, the court found that a marketing department's alleged

7

involvement in patent-related advertising, combined with the department's alleged knowledge about its products' patent status (or lack thereof), sufficiently pled intent to deceive the public. 2011 WL 5130445, at *4. Similarly, Norix's allegations that Cortech blatantly mismarked products for which no patents had ever been pending, combined with its allegations that Claffy personally participated in daily operations like advertising, sufficiently plead intent to deceive the public.

And the fact that most of Cortech's allegedly mismarked products were never subject to any patent applications indicates that Cortech understood the falsity of its representations and intended to deceive the public. *See Sadler-Cisar, Inc. v. Commercial Sales Network, Inc.*, 786 F. Supp. 1287, 1296 (N.D. Ohio 1991) (a corporation's use of the phrase "patent pending" on products where no application was pending "could not have been solely the result of inadvertence" and showed an intent to deceive); *DP Wagner Mfg. Inc. v. Pro Patch Sys., Inc.*, 434 F. Supp. 2d 445, 456 (S.D. Tex. 2006) (a company acted with intent to deceive when it marked products with patent language despite "full knowledge" that the patents at issue "did not include any claims that covered the marked products"). Just as the blatantly false nature of the patent representations created an inference of intentional deception in those cases, the blatant nature of Cortech's mismarking creates a plausible inference of intent to deceive here.

Although "no court has held that naming a specific individual is all a claimant must do to establish intent to deceive," *Linear Grp. Servs., LLC v. Attica Automation, Inc.*, No. 213CV10108GADMKM, 2013 WL 12184248, at *2 (E.D. Mich. Sept. 4, 2013),

8

and allegations of a company's "sophistication" do not—by themselves—show intent to deceive, *BP Lubricants*, 637 F.3d at 1312, Norix goes beyond those basic allegations here. Norix both singles out an individual (Claffy) *and* alleges that Claffy oversaw Cortech and involved himself in the company's daily operations, such as applying for (and abandoning) certain patents. Combined with the allegation that Cortech falsely marked products that *never* had patents pending (or even patent applications), the allegations about Claffy adequately plead intent to deceive.

### 3. Competitive Injury

Norix alleges that Cortech's false marking caused Norix competitive injury because Norix and Cortech directly compete in the market for intensive-use furniture and often submit competing bids (for confusingly similar products) to the same customers. [31] ¶¶ 96–97. Norix also alleges that its customers value avoiding patent liability, so Cortech's false patent assurances make customers more likely to choose Cortech's falsely marked products over Norix's products. *Id.* ¶¶ 99–100. Cortech argues that Norix fails to plead facts, such as specific examples of lost sales, that demonstrate any competitive injury. [35] at 3.

In 2011, Congress amended the False Marking Statute by passing the America Invents Act (AIA), which required private parties bringing false marking claims to allege facts showing that they suffered a "competitive injury" because of the false marking. *See Stauffer v. Brooks Bros. Grp., Inc.*, 758 F.3d 1314, 1316 (Fed. Cir. 2014). Congress added the competitive-injury requirement to eliminate *qui tam* false marking suits brought by "unrelated, private third parties" not involved in the

9

relevant market. *See Sukumar v. Nautilus, Inc.*, 785 F.3d 1396, 1401 (Fed. Cir. 2015) (reviewing the AIA's plain text and legislative history). A competitive injury means a "wrongful economic loss caused by a commercial rival, such as the loss of sales due to unfair competition," or "a disadvantage in a plaintiff's ability to compete with a defendant, caused by the defendant's unfair competition." *Id.* at 1400 (quoting *Black's Law Dictionary* (9th ed. 2009)).

Pleading a competitive injury requires alleging an actual injury, not merely a hypothetical or potential future injury. *Two Moms & a Toy*, 898 F. Supp. 2d at 1218; *see also Sukumar*, 785 F.3d at 1402 (recognizing that "potential competitors" might suffer competitive injuries if false marking actually prevents them from entering a market, but rejecting as "too speculative" the argument that the AIA confers standing "upon any entity that claims a subjective intent to compete"). For example, in *We-Flex*, the plaintiff alleged that the defendant's false marking reduced the plaintiff's goodwill by making it harder for the plaintiff to distinguish its own patented products in a competitive market, and that the defendant gained a competitive advantage by claiming a patented status for its products without spending money to secure patents. *We-Flex, LLC v. NBSP, Inc.*, No. H-11-1078, 2012 WL 1440439, at *1 (S.D. Tex. Apr. 25, 2012). The court deemed those allegations speculative because the plaintiff failed to offer specific examples of lost sales or otherwise allege facts showing that it suffered a cognizable injury. *Id.* at *6–7 (noting that "competitive injury" in the AIA "is amenable to a plain reading" as "supported by the legislative history"). Likewise, in *Cot'n Wash*, the counterclaimants alleged that they competed with the plaintiffs in

the small market for laundry products and that the plaintiffs' patent infringement caused them to suffer "lost sales, loss of market share, loss of business opportunities, and loss of good will," but otherwise failed to specific instances of competitive injury. *Cot'n Wash, Inc. v. Henkel Corp.*, 56 F. Supp. 3d 613, 624 (D. Del. 2014). This was not enough. Even though a valid claim might be pled without alleging specific instances of injury, the court found that such conclusory allegations failed to show "a causal connection" between plaintiffs' alleged false marking and defendants' alleged injury. *Id.*

Here, Norix's speculative allegations of competitive injury fail to meet the requisite standard. Norix alleges that it competes with Cortech in a small market and that Cortech enjoys the advantage of not having to pay for patent applications while falsely reaping the marketing benefits of patent protection, [31] ¶ 99, but Norix fails to set forth any particular instances of competitive injuries or otherwise establish a causal connection between, for example, lost sales and Cortech's false marking, *see, e.g., Gravelle v. Kaba Ilco Corp.*, 684 F. App'x 974, 979 (Fed. Cir. 2017) (identifying possible methods of demonstrating competitive injury) (citing *Forest Grp., Inc. v. Bon Tool Co.*, 590 F.3d 1295, 1302–03 (Fed. Cir. 2009)); *Rogers v. Conair Corp.*, No. CIV.A. 10-1497, 2012 WL 1443905, at *4 (E.D. Pa. Apr. 25, 2012) (the plaintiff's allegations that the defendant's false marking led to "lost sales and competitive disadvantage," without more specifics, did not suffice to plead competitive injury); *Linear*, 2013 WL 12184248, at *6 (the plaintiff merely alleged that the defendant's false marking gave the defendant a competitive advantage, and

thus failed to plead competitive injury); *Fisher-Price, Inc. v. Kids II, Inc.*, No. 10-CV-00988A F, 2011 WL 6409665, at *10 (W.D.N.Y. Dec. 21, 2011) (finding an insufficient competitive injury pleading where the claimants only generally alleged that they had been "competitively injured").

At best, Norix alleges that customers "are less *likely*" to choose products not marked as "patent pending," meaning that "each sale of Cortech's products obtained by defendants' false representations is *likely* a lost sale to Norix." [31] ¶¶ 75–76 (emphasis added). Norix still fails to allege, however, that it actually lost sales, saw profits drop, or experienced any other cognizable injury because of Cortech's false representations, so its pleading remains deficient in that regard. *See Gravelle*, 684 F. App'x at 979–80 (affirming summary judgment against a plaintiff who speculated that the product features that the defendant falsely marked "*could* readily influence a buyer's purchasing decision," but otherwise failed to show "that buyers actually purchased the 'patent pending' machines over Gravelle's machines").

Norix has now had three chances to allege competitive injury, so its failure to provide specifics—whether through specific lost sales, decreased profits, or another avenue—shows its inability to establish any competitive-injury claim. As the court noted in *Fisher-Price*, a party alleging its own competitive injuries does not need access to extensive discovery or information from the opposing side. 2011 WL 6409665, at *10 ("[I]f Fisher–Price's alleged false marking of its cradle swing products has discouraged or deterred Defendant from manufacturing or marketing competing cradle swing products, Defendant would or should be in possession of such

information without resort to discovery from Plaintiffs.").

Because Norix fails to provide specific allegations supporting an actual competitive injury, this Court grants Cortech's motion to dismiss Count II.

### B. Count IV: Illinois Consumer Fraud and Deceptive Trade Practices Act

Cortech argues that this Court should also dismiss Count IV because, among other reasons, Norix cannot show a competitive injury. [35] at 2. To state a claim under the Illinois Consumer Fraud and Deceptive Trade Practices Act (ICFA), a plaintiff must allege: (1) the defendant's deception; (2) the defendant intended that the plaintiff rely on that deception; (3) the deception occurred in a commercial transaction; (4) the plaintiff suffered actual damage; and (5) the deception proximately caused the damage. *Aliano v. Louisville Distilling Co., LLC*, 115 F. Supp. 3d 921, 929–30 (N.D. Ill. 2015). Pleading an ICFA claim requires factual allegations showing that harm resulted from the alleged deception. *See id.* at 931 (finding sufficient pleading of actual damage in an ICFA claim where the plaintiff allegedly made a money-losing purchase based on the defendant's fraudulent statement); *Cocroft v. HSBC Bank USA, N.A.*, 796 F.3d 680, 687–88 (7th Cir. 2015) (finding insufficient pleading of actual damage in an ICFA claim where borrowers received a letter stating that a trustee could not locate the borrowers' account, but did not allege facts showing injury resulting from that letter).

In cases involving competing businesses, the "actual damage" element of an ICFA claim can refer to competitive injuries. *See Vulcan Golf, LLC v. Google Inc.*, 552 F. Supp. 2d 752, 777 (N.D. Ill. 2008) ("Businesses have standing to sue under the

13

Illinois Consumer Fraud and Deceptive Trade Practices Act to redress competitive injury they suffer when other businesses deceive customers.") (quoting *Pain Prevention Lab, Inc. v. Elec. Waveform Labs, Inc.* 657 F. Supp. 1486, 1493 (N.D. Ill 1987)). Because the actual damage element of an ICFA claim encompasses competitive injuries, and because pleading actual damage requires showing that the alleged deception caused harm, the ICFA's actual damage element equates to the competitive injury element of a false marking claim in this case. As discussed above, Norix fails to sufficiently plead competitive injury, so it has not alleged "actual damage" either. Thus, this Court grants Cortech's motion to dismiss Count IV.

### C. Count V: Illinois Uniform Deceptive Trade Practices Act

Finally, Cortech argues that this Court should dismiss Count V because Norix cannot show a competitive injury and cannot plead deceptive intent. [35] at 2. To state a claim under the Illinois Uniform Deceptive Trade Practices Act (UDTPA), plaintiffs must allege both a deceptive trade practice and a "likelihood of confusion or misunderstanding" on the part of customers. *ATC Healthcare Servs., Inc. v. RCM Techs., Inc.*, 192 F. Supp. 3d 943, 952 (N.D. Ill. 2016). A plaintiff may state a claim under the UDTPA by alleging that a defendant published misleading or disparaging statements about a plaintiff's products, without separately alleging that harm resulted from the misrepresentation. *See, e.g., McGraw-Edison Co. v. Walt Disney Prods.*, 787 F.2d 1163, 1174 (7th Cir. 1986); *Fedders Corp. v. Elite Classics*, 268 F. Supp. 2d 1051, 1064 (S.D. Ill. 2003) (noting that the UDTPA "provides a remedy for disparagement of a product"); *All Star Championship Racing, Inc. v. O'Reilly Auto.*

*Stores, Inc.*, 940 F. Supp. 2d 850, 872 (C.D. Ill. 2013) (holding that proof of trademark infringement establishes a UDTPA violation).

Thus, while pleading competitive injury in a false marking claim requires alleging harm that resulted from a misrepresentation, pleading a likelihood of customer confusion merely requires alleging that a party made a misleading statement about a product. Given that distinction, Cortech's assertion that Norix failed to plead competitive injury falls short of the mark for Count V. Beyond Cortech's bare (and incorrect) statement that UDTPA claims require pleading competitive injury and deceptive intent, [35] at 2, Cortech does not address the UDTPA elements or argue that Norix fails to allege a likelihood of confusion. Accordingly, this Court denies Cortech's motion to dismiss Count V.

## IV. Conclusion

For the reasons explained above, this Court partially grants and partially denies Cortech's motion to dismiss [35]. This Court grants the motion as to Counts II and IV and denies it as to Count V. All dates and deadlines stand.

Dated: August 6, 2018

Entered:

_____
John Robert Blakey
United States District Judge

15