# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| NORIX GROUP, INC., <br><br> Plaintiff, <br><br> v. <br><br> CORRECTOINAL TECHNOLOGIES, INC., d/b/a CORTECH USA, and VDL INDUSTRIES, LLC, d/b/a AMERICAN SHAMROCK, <br><br> Defendants. | Case No. 17-cv-07914 <br><br> Judge John Robert Blakey |

## MEMORANDUM OPINION AND ORDER

This patent infringement action comes before this Court for interpretation and construction of certain disputed claims in patent no. 9,661,933 (the '933 patent). This patent generally claims a one-piece, molded bed suitable for intensive use environments such as prisons and behavioral health centers. This Court conducted a *Markman* hearing on January 10, 2019. [93]. Upon consideration of the parties' arguments, and for the reasons stated herein, this Court adopts the constructions set forth below.

### I.   Patent Overview

As Plaintiff's counsel explained at the *Markman* hearing, the '933 patent describes an intensive-use bed suitable for demanding environments—such as prisons or mental health facilities—requiring furniture that resists abuse from

1

occupants. Plaintiff also designed the bed so that occupants could not use it as a tool to hurt themselves or others. For these reasons, Plaintiff sought to create a durable bed that remains easy to maintain and possesses certain features useful for these goals, such as the ability to mount to the ground or wall.

The '933 patent consists of three independent claims (Claims 1, 12, and 15). [31-1] at 20. In its briefing, Plaintiff provided a visual breakdown of the claims and their elements. [74-2]. This Court reproduces that chart below. The parties dispute the bolded terms.

**INDEPENDENT CLAIMS OF '933 PATENT**

1. An intensive use bed comprising:

| a molded outer shell having |
| --- |
| a top surface, |
| bottom surface, |
| a pair of end walls, |
| a first side wall and a second side wall, |
| **a support surface on the top surface,** |
| a ridge surrounding the perimeter of the support surface; |

| **a means for attaching the bed** to a **mounting surface** |
| --- |
| in one of the first or second side wall; |

| a storage compartment **within the perimeter of the support surface**, the storage compartment having |
| --- |
| a storage opening in one of the first or second side walls, and |
| a floor spaced from the top surface, |
| the storage compartment, the storage compartment [sic] between the top surface and the bottom surface, |
| the storage compartment **integrally molded in the outer shell to form an enclosed space.** |

12. An intensive use bed mounted on a floor comprising:

> a hollow molded non-penetrable outer shell for resisting penetration by fluids having
>> a top surface,
>> bottom surface,
>> a pair of end walls,
>> a first side wall and a second side wall,
>> **a support surface on the top surface,**
>> a ridge surrounding the perimeter of the support surface,
>> the bottom surface on the floor;
>
> a mounting hole in the bottom surface,
>> a fastener in the mounting hole,
>> the fastener extending through the bottom surface,
>> the fastener attached to the floor; and
>
> a storage compartment **within the perimeter of the support surface,**
>> **the storage compartment under the support surface having**
>>> **a storage opening in a wall,**
>>> **a top on the top surface** and
>>> a storage cavity floor,
>>
>> the storage compartment **integrally molded in the outer shell,**
>> the storage compartment **further comprises a sloping storage cavity floor**
>>> opening into one of the walls and
>>> disposed between the top surface and the bottom surface.

15. An intensive use bed mounted on a floor comprising:

| a hollow molded outer shell having |
| --- |
|     an interior, |
|     top surface, |
|     bottom surface, |
|     a pair of end walls, |
|     a first side wall and a second side wall, |
|     **a support surface on the top surface,** |
|     a ridge surrounding the perimeter of the support surface, |
|     the bottom surface spaced from the top surface and on the floor, |
|     a plurality of openings formed in the bottom surface, |
|     a mounting hole in the bottom surface, |
|     a fastener in the mounting hole, |
|     the fastener extending through the bottom surface, |
|     the fastener attached to the floor; and |

| a storage compartment **within the perimeter of the support surface,** |
| --- |
|     the support surface over the storage compartment being a non-penetrable outer shell for resisting penetration by fluids |
|     the storage compartment having |
|         a single storage opening |
|         and a storage cavity floor, |
|     the storage opening formed in one of the walls, |
|     the storage cavity floor between the top surface and the bottom surface. |

As to the disputed claims, the chart below details the contested claims and the parties' competing constructions.

| Term/phrase addressed in claim construction briefs | Plaintiff's proposed construction | Defendants' proposed construction |
|---|---|---|
| "a support surface on the top surface" (claims 1, 12, 15) | Ordinary meaning, or, alternatively, the part of the top surface that together with the ridge forms a recessed pocket as a means for locating a mattress as well as containing the seepage of fluids within the ridge. | Two distinct elements, namely a "top surface" and "a support surface" on the top surface. |
| A "means for attaching the bed" (claim 1) | Any of the structures described in the specification for attaching furniture to a mounting surface, or an equivalent thereof. | Recessed scallop shaped pockets in outer walls with a mounting flange and a hole for receiving a fastener such as a bolt that passes through the hole and into the floor, or an equivalent structure thereof. |
| "mounting surface" (claim 1) | Ordinary meaning, or, alternatively, a surface upon which the bed should be mounted, such as the floor. | The outer edge of the bottom surface of the bed that contains the caulk channel and which contacts a structural element, such as a floor. |
| "in one of the first or second side wall" (claim 1) | In either of the first or second side walls. | In one of the first or second side wall, but not both side walls. |
| "within the perimeter of the support surface" (claims 1, 12, 15) | Ordinary meaning or, alternatively, into the perimeter of the support surface. | Within the perimeter defined by the support surface and not extending beyond. |
| "integrally molded in the outer shell" (claims 1, 12) | Molded and part of, welded to, or attached by fasteners or adhesive to the outer shell. | Molded as a single complete unit. |
| "to form an enclosed space" (claim 1) | Ordinary meaning or, alternatively, to form a space bounded on all sides by surfaces or a single opening | A space enclosed on all sides. |
| "the storage compartment under the support surface having a storage opening in a wall" (claim 12) | Ordinary meaning or, alternatively, the storage compartment being under the support surface and having a storage opening in any one of the side or end walls. | A storage compartment under the support surface having a storage opening in a separate and distinct wall from any wall previously defined earlier in the claim. |
| "a top on the top surface" (claim 12) | Ordinary meaning or, alternatively, a top to the storage compartment that is attached or in proximity to the top surface of the bed. | A new "top" element on the top surface. |
| "further comprises a sloping storage cavity floor" (claim 12) | Ordinary meaning or, alternatively, the storage compartment floor is sloping. | An additional element, a sloping cavity floor. |

## II. Legal Standard

Claim construction constitutes a question of law to be determined by the court. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 970–71 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996). This question remains a critical task because the patent claims define the scope of the patent, impacting the future infringement analysis. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005).

To determine patent claims, courts must give the claim words their "ordinary and customary meaning" as they would have to a person of ordinary skill in the field. *Id.* (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)). Courts must always begin by considering the intrinsic evidence on record including the patent itself, consisting of the claims, the specification, and the prosecution history. *Vitronics*, 90 F.3d at 1582. In fact, the specification often constitutes the single best guide to determining the meaning of a disputed term. *Id.* at 1582. If the intrinsic evidence does not settle the matter, however, courts may then turn to extrinsic evidence. *Phillips*, 415 F.3d at 1317. Extrinsic evidence consists of "all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises." *Id.* (quoting *Markman*, 52 F.3d at 980).

## III. Analysis

1. "A Support Surface on the Top Surface" (Claims 1, 12, 15)

The parties first dispute the phrase "a support surface on the top surface." [31-1] at 20. Defendants argue that this language requires the patented invention to

include two separate surfaces: a top surface and a support surface. [56] at 13–14. Defendants' argument relies heavily upon an alleged necessary corollary of the "antecedent basis rule." *Id*. They explain that the antecedent basis rule stipulates that the patent will refer to previously introduced claim elements or limitations using definite articles such as "the" or "said." *Id*. at 13. Thus, Defendants claim, elements or limitations introduced with "a" or "an" must necessarily signal the introduction of a new element or limitation. *Id*. While this Court accepts that it might certainly be true that sometimes the patent will introduce a new element or limitation with "a" or "an," Defendants provide no support for why this must necessarily be the case.

Accordingly, under the requisite standards, this Court must examine the use of the word "a" within the context of the whole patent. *Interactive Gift Exp., Inc. v. Compuserve Inc.*, 256 F.3d 1323, 1331 (Fed. Cir. 2001) (explaining that the intrinsic evidence, i.e., the patent itself, constitutes the most significant source of the operative meaning of the claims). Here, the patent states it claims an intensive use bed comprising "a molded outer shell having a top surface, bottom surface, a pair of end walls, a first side wall and a second side wall." [31-1] at 20. This description lays out the bed's basic geometry. After describing the bed's geometry, the patent further states the bed has "a support surface on the top surface" and "a ridge surrounding the perimeter of the support surface." *Id*. In another section, the specification explains that the ridge outlining the support surface forms a "recessed pocket as a means for locating a mattress (not shown) as well as containing a seepage of bodily or other undesirable fluid within the ridge." *Id*. at 17.

7

As such, the patent first explains the bed's geometry as having a top, bottom, and two end sides and two wall sides, and then goes on to specify certain features about the top surface: namely that the top surface encompasses a support surface and a ridge wall, together creating a recessed pocket. The specification does not mandate a separate surface on the top surface. While the use of the word "a" could introduce a new element, no language here compels such a conclusion. Moreover, the drawings (corresponding to the numbered components in the specification and claims) further confirm that the support surface does not constitute a separate surface from the top surface. As Figures 1 and 3 show, the top surface (22) and the support surface (35) point to the same area and do not provide any indication of a separate surface on top of the top surface. *Id*. at 4–5. Instead, the drawing further clarifies the top surface's features. Accordingly, this Court adopts the following construction: the support surface is part of the top surface that together with the ridge forms a recessed pocket as a means for locating a mattress as well as containing the seepage of fluids within the ridge.

2. A "Means for Attaching the Bed" (Claim 1)

In Claim 1, the patent claims an intensive use bed that includes "**a means for attaching the bed** to a mounting surface in one of the first or second side wall." *Id*. at 20 (emphasis added). Both parties agree this claim amounts to a "means plus function" claim. [56] at 15; [74] at 10. The Patent Act permits patent seekers to draft claims in a means-plus-function format. 35 U.S.C. § 112(f) ("An element in a claim for a combination may be expressed as a means or step for performing a specified

8

function."). These claims recite "a function to be performed rather than a definite structure or the materials required to perform the function." *Advanced Med. Optics, Inc. v. Alcon Inc.*, 361 F. Supp. 2d 370, 391 (D. Del. 2005). To construe this claim, this Court must identify both: (1) the function recited in the claim; and (2) the "structure(s) in the specification of the patent necessary to perform the recited function." *Id.*

Neither party disputes that the function described here constitutes a means for attaching the intensive use bed to a mounting surface. *See* [56] at 15–16; [74] at 10–12. Instead, the parties contest the structures necessary to attach the bed to a mounting surface. *Id.* Defendants propose a narrow construction based upon the patent's figures, proposing the following structure definition: "recessed scallop shaped pockets in outer walls with a mounting flange and a hole for receiving a fastener such as a bolt that passes through the hole and into the floor." [56] at 16. Fearing an arbitrarily narrowed scope of the claim, Plaintiff seeks a broad construction that does not limit the function to only the structure set forth in the specification. [74] at 11.[1] Instead, Plaintiff argues, the relevant structures consist of any of the "structures described in the specification for attaching furniture to a mounting surface, or an equivalent thereof." *Id.* at 10.

---

[1] Despite Plaintiff's fears, the Patent Act clearly mandates that functional claims be "construed to cover corresponding structure . . . described in the specification *and equivalents thereof*." 35 U.S.C. § 112(f) (emphasis added). For this reason, naming a specific corresponding structure does not prohibit a patentee from arguing that another product has an equivalent structure and thus infringes the patent. Such issues, however, should be saved for the infringement analysis, rather than claim construction.

9

In both the patent language and figures here, the patent describes and shows fastener pockets along the outer walls of the beds, which remain generally scalloped shaped. *See, e.g.*, [31-1] at 17, 20, Figures 1–10. These pockets include fastener holes extending through the bottom surface. Accordingly, this Court construes "a means for attaching the bed" as a means for attaching a bed through the following structures: fastener pockets, generally scalloped shaped, along the outer bed walls wherein each pocket contains a fastener hole extending through the bottom surface.

3. "Mounting Surface" (Claim 1)

Relatedly, Claim 1 not only claims a means for attaching the bed, but a "means for attaching the bed to a **mounting surface**." *Id.* at 20 (emphasis added). Defendants construe "mounting surface" as a part of the bed, and seek the following construction: "The outer edge of the bottom surface of the bed that contains the caulk channel and which contacts a structural element, such as a floor." [56] at 19. Plaintiff counters that the mounting surface remains separate from the bed and should be construed as "a surface upon which the bed should be mounted, such as a floor." [74] at 12.

Defendants premise their argument largely upon language from an earlier Norix patent (the '059 patent) wherein Defendants claim that Plaintiff defined "mounting surface" as a specific portion of the bed. [56] at 16–20. Defendants also point to Plaintiff's communications to the USPTO during the '059 patent's prosecution in which Plaintiff allegedly used the term "mounting surface" with an alternative meaning. *Id.* at 17–18.

This Court will again begin with the most important evidence, the patent's intrinsic evidence. *Advanced Med. Optics*, 361 F. Supp. 2d at 376. The language of the claim unmistakably shows the mounting surface remains separate from the bed. [33–1] at 20 (claiming an intensive use bed comprising of "a means for *attaching the bed to a mounting surface*") (emphasis added). Indeed, the entire concept of attaching one item to another requires two distinct items to create the attachment. *Attachable*, Webster's Third New International Dictionary (3d ed. 1986) ("capable of being fastened or added *to something*") (emphasis added). Moreover, the specification also clearly states that the mounting surface constitutes an external surface such as a floor or a wall. *See, e.g.,* [33–1] at 20 ("In the preferred embodiment, the components are typically bolted to a structurally sound mounting surface such as a floor (bed, nightstand, stool) or a wall (Wardrobe, wall shelf, wall storage units) through molded-in bolt hole locations.").

In attempting to refute this evidence, Defendants point to certain language in the '059 patent's specification that they claim seemingly describes the mounting surface as part of the bed. *See* [56] at 16 ("The caulk channel 54 may be molded or cut into the mounting surface and extends around the entire perimeter of the lower surface."). But this evidence remains extrinsic evidence related to a different patent and it fails to overcome the intrinsic evidence. Moreover, as Plaintiff explains, when an individual mounts two surfaces together, those in the industry commonly refer to both surfaces as a "mounting surface" depending upon context. [74] at 13. Based upon the record, this Court finds Plaintiff's reading plausible and proper. For these

11

reasons, this Court construes the phrase "mounting surface" as: a surface upon which the bed could be mounted, such as a floor.

    4.    <u>"In One of the First or Second Side Wall" (Claim 1)</u>

Claim 1 claims "a means for attaching the bed to a mounting surface **in one of the first or second side wall**." [31-1] at 20 (emphasis added). The dispute over this phrase centers around the meaning of the word "or." Defendants argue that the patent uses "or" exclusively, so that the bed must be mounted in either the first or second side wall but not both. [56] at 20. Plaintiff contends the patent uses "or" inclusively, thus, the bed needs to be mounted in at least the first or second side wall but could also be mounted in both. [74] at 15–16. This Court adopts the latter view.

The patent contains no evidence requiring or even suggesting that the bed may not be attached to the mounting surface through both the first and second side wall. Despite Defendants' claims to the contrary, courts recognize that "or" can be either exclusive or inclusive; and courts typically consider "or" exclusive only when combined with "either," *see, e.g., Gonzalez v. Infostream Grp., Inc.*, Case No. 2:14-cv-906-JRG-RSP, 2015 WL 5604448, at *18 (E.D. Tex. Sept. 21, 2015), which is not present here. Given that the patent does not use the word "either" and that nothing in the language, drawings, or function of the bed otherwise suggests use of the exclusive version of "or," this Court construes "in one of the first or second side wall" to mean: in one of the first or second side walls or in both side walls.

5. "Within the Perimeter of the Support Surface" (Claims 1, 12, 15)

Claims 1, 12, and 15 claim an intensive use bed that features "a storage compartment **within the perimeter of the support surface**." [31-1] at 20 (emphasis added). Figures 3 and 4 depict those storage compartments, labeled as "28." *Id*. at 5. Defendants contend that because the patent defines storage compartment as "within the perimeter of the support surface" and the patent elsewhere defines the "support surface" as surrounded by a different element (i.e., the ridge surrounding the support surface as shown as (33) in Figures 1 and 3), then for the storage compartment to be "within the perimeter of the support surface" it must not extend beyond the support surface and into the ridge surrounding the support surface. [56] at 22. This Court finds this reading unreasonable as the compartments would not be compartments at all but hollow squares in the interior of the bed. No third-party reading the patent would understand "compartment" that way, nor did the illustrations depict the compartments in such a manner.

Additionally, the patent did not employ this language in a vacuum. Rather the patent examiner modified the original language describing the storage compartment spatially as "in the bed" to "within the perimeter of the support surface." *See* [55] at A532-33. The patent examiner modified this language in order to distinguish the '933 patent from the prior art. *Id*. That prior art disclosed beds featuring storage compartments on the side of the bed, as opposed to compartments integrally molded into the bed and located under the support surface. [74-4] at 8. In order to convey that the '933 patent describes internally molded storage compartments rather than

13

molded on the bedside, the patent examiner added this language. Accordingly, the language serves not to exclude the necessity of a storage opening in one of the side walls (which would invariably encroach on the perimeter of the support surface as described), but rather to clarify the position of that compartment.

Finally, Defendants' proposed construction also directly conflicts with the list of elements described in the subsequent claim language. For example, the claim then describes that the storage compartment has "a storage opening," which would be impossible if the compartment did not encroach into the ridge area. [33-1] at 20. Plaintiff's proposed construction, on the other hand, does not conflict with the claim language and still gives effect to the narrowing of claim scope the patent examiner intended for the language to provide.

Accordingly, this Court construes "within the perimeter of the support surface" to mean: into the perimeter of the support surface.

6. "Integrally Molded in the Outer Shell" (Claims 1 and 12)

In further describing the storage compartments, Claims 1 and 12 claim an intensive use bed with "a storage compartment **integrally molded in the outer shell**." [31-1] at 20 (emphasis added). Defendants argue that "integrally" modifies the claim element requiring that the bed storage compartments be a part of the bed as a single complete unit. [56] at 23. Plaintiff, on the other hand, claims the patent provided an alternate definition for "integrally molded." [74] at 19. Based upon the record, Defendants' reading prevails.

14

To begin, this Court finds the claim language unambiguous. The patent describes the storage compartments as "integrally molded in the outer shell [of the bed] to form an enclosed space." [31-1] at 20. This description also remains consistent with the disclosed embodiments, which show the storage compartments as molded portions of the bed itself, not attachments. *See id*. at 5, Figures 3, 4.

Plaintiff's proposed construction focuses upon one portion of the specification explaining an alternate embodiment of intensive use furniture as depicted in Figures 25 and 34:

> An integrally molded sloped top surface 193 is used to prevent storage and concealment of contraband and further resist climbing. The sloped surfaced [sic] could be a separate piece and attached during manufacturing or installation by fasteners or adhesive as is well known n [sic] the art of fastening plastic components together.

*Id*. at 19. This disclosure alone, however, does not provide the clear intent required to substitute for an ordinary meaning under the "inventor's lexicography." *Thorner v. Sony Comput. Entm't. Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012) ("It is not enough for a patentee to simply disclose a single embodiment or use a word in the same manner in all embodiments, the patentee must 'clearly express an intent' to redefine the term.") (citations omitted). In fact, this disclosure supports Defendants' construction. In the disclosure, Plaintiff introduces an element of its disclosed wardrobe as "integrally molded." The following sentence then describes that the same element "*could be* a separate piece and attached during manufacturing or installation." (emphasis added). The patent could have described this element as a separate piece attached later, but, as disclosed in the preferred embodiment, the

15

patent describes the element as integrally molded. Therefore, "integrally molded" does not encompass items created as a separate piece and attached later as used by Plaintiff in this disclosure. Finally, this language refers to an "alternate embodiment of an intensive use furniture" rather than the specific claimed intensive use bed claimed in Claims 1 and 12.

For these reasons, this Court construes "integrally molded in the outer shell" to mean: molded as a single complete unit within the outer shell.

### 7. "To Form an Enclosed Space" (Claim 1)

The next contested phrase concerns the storage compartments and describing the storage compartments as "integrally molded in the outer shell to form an enclosed space." [31-1] at 20. Figures 3 and 4 depict these storage compartments. *Id*. at 5. Defendants argue that an enclosed space should be construed as "a space enclosed on all sides," [56] at 25, while Plaintiff maintains it should be understood as "to form a space bounded on all sides by surfaces or a single opening," [74] at 20. Here, Plaintiff's reading controls.

To begin, Defendants rely entirely upon one piece of extrinsic evidence, a dictionary definition, to support their construction. [56] at 25–26. Defendants further concede that construing a storage compartment as enclosed on all sides would lead to absurd results but claim this Court cannot redraft claims to avoid absurd results. *Id*. While that may so, this Court also may not ignore unambiguous intrinsic evidence to create an absurd result.

As the claim itself explains, "enclosed space" refers to the storage compartment, [31-1] at 20; and compartments must normally be accessible in order to contain something. Figures 3 and 4 also affirm that the storage compartment enclosure contains an opening. *Id.* at 5. Moreover, the definitions Defendants mention—"to close in," "surround," or "confine," [56] at 25—are not necessarily inconsistent with a storage compartment containing a single opening, and other sources explicitly recognize that an "enclosed space" includes an opening. *See, e.g., Enclosed Space - Definition(s)*, Int'l Ass'n Drilling Contractors (2014), https://www.iadclexicon.org/enclosed-space/ (describing the term in the drilling context as a space with "limited openings for entry and exit"). Thus, this Court construes "to form an enclosed space" as: bounded on most sides.

8. <u>"The Storage Compartment Under the Support Surface Having a Storage Opening in a Wall" (Claim 12)</u>

Claim 12 claims an intensive use bed that includes a storage compartment "under the support surface having a storage opening in a wall." [31-1] at 20. The parties dispute the use of the word "a" to describe the "wall." Defendants again point to their logical corollary of the antecedent basis rule and maintain that any element introduced with "a" or "an" must be a new element. [56] at 27. Once again, use of the antecedent basis rule fails on the record presented here.

Instead, looking at the claim language, the disputed claim language does not introduce a new element. When Claim 12 refers to "the storage compartment . . . having a support surface in a wall," the claim refers to the walls previously described in the claim. [31-1] at 20 (describing "a pair of end walls, a first side wall and a second

17

side wall"). The patent buttresses this interference by the fact that no part of the patent describes a fifth wall. Accordingly, this Court construes "the storage compartment under the support surface having a storage opening in a wall" to mean: the storage compartment being under the support surface and having a storage opening in one of the side walls.

9. "A Top on the Top Surface" (Claim 12)

This Court next turns to the meaning of a storage compartment with "a top on the top surface." [31-1] at 20. Keeping with their theme, Defendants argue a "top" constitutes a new element and must be something different than the "top surface." [56] at 27–29. As explained before, this Court does not construe "a" or "an" as necessarily introducing a new element or surface. In context of the entire claim element, this language instead explains the storage compartment, noting that it has "a top," which is located "on the top surface." [31-1] at 20. Additionally, the patent specification drawings remain consistent with this interpretation because the specification fails to identify a new, separate surface on the compartment's top surface. *Id.* at 5, Figures 3, 4. For these reasons, this Court construes "a top on the top surface" to mean: a top of the storage compartment, constituting the top surface.

10. "Further Comprises a Sloping Storage Cavity Floor" (Claim 12)

Finally, this Court considers the meaning of a storage compartment that "further comprises a sloping storage cavity floor." [31-1] at 20. Defendants argue that the use of "further comprising" means that the patent, once again, introduces a

new element. [56] at 29. Plaintiff counters that the sloping floor merely describes the storage compartment as consisting of a sloped floor. [74] at 24.

Based upon the record, this language introduces a limitation—that the storage cavity floor slopes—rather than creating a distinct, separate storage compartment floor. In fact, the entire claim makes clear that the patent introduces a limitation rather than a new element:

> [A] storage compartment within the perimeter of the support surface, the storage compartment under the support surface having a storage opening in a wall, a top on the top surface and *a storage cavity floor*, the storage compartment integrally molded in the outer shell, the storage compartment *further comprises a sloping storage cavity floor* opening into one of the walls and disposed between the top surface and the bottom surface.

[31-1] at 20 (emphasis added). The first part of the claim lists the elements explaining the basic spatial relationships. The clause beginning with "further comprises" then introduces more limitations and information about how these elements fit together, mainly that the storage cavity floor slopes into the storage opening. Additionally, Defendants offers no intrinsic support for their construction.

For these reasons, this Court construes "further comprising a sloping cavity floor" as: the storage compartment floor slopes.

## IV. Conclusion

For the foregoing reasons, this Court adopts the constructions set forth above.

Dated: March 10, 2020.

                                                                          _____
                                                                          John Robert Blakey
                                                                          United States District Judge